## James Currier *versus* The Inhabitants of Lowell.

Where a verdict was rendered in this Court in favor of a plaintiff in an action against a town, under *St.* 1786, *c.* 81, for injuries sustained in person and property in consequence of a *defect in a highway, and a motion was* made by the defendants for a new trial, and after the commencement of the ensuing law term of the Court, but before any hearing was had upon such motion, the plaintiff died, the Court refused to dismiss the action, and upon overruling the motion, ordered judgment *to* be entered up as of a day of such term when the plaintiff was in full life.

By *St.* 1830, *c.* 4, establishing the Boston and Lowell Rail-Road Corporation, it is provided, (§ 11,) that if the rail-road should cross any highway, it should be so constructed as not to impede the safe and convenient use of such highway. Where an excavation was made by such corporation in a highway for the purpose of constructing the rail-road across it, and an injury was sustained by a person travelling on the highway, in the evening, in consequence of being thrown into the excavation, *it was held,* that the town in which such highway was situated was liable to an action for such injury, under *St.* 1786, *c.* 81, although the town had given notice to the superintendent of the work on the rail-road, that a barrier must be put up for the protection of travellers on the highway and such superintendent had promised that this should be done.

THIS was an action on the case upon *St.* 1786, *c.* 81, to recover double damages for injuries sustained by the plaintiff in consequence of being precipitated into an excavation, while travelling on a public highway in Lowell.

By the act establishing the Boston and Lowell Rail-Road Corporation, *St.* 1830, *c.* 4, § 1, it is provided, that the corporation shall be authorized to construct a rail-road from Boston to Lowell, and for that purpose, " to lay out their road, at least four rods wide, through the whole length." By § 11, it is provided, " that if the said rail-road shall, in the course thereof, cross any canal, turnpike, or other highway, the said rail-road shall be so constructed, as not to impede or obstruct the safe and convenient use of such canal, turnpike or other highway. And the said corporation shall have the power to raise or lower such turnpike or highway, so that the rail-road, if necessary, may conveniently pass under or over the same   And if said corporation shall raise or lower any such turnpike or highway, pursuant thereto, and shall not so raise or lower the same, as to be satisfactory to the proprietors of such turnpike, or to the selectmen of the town, in which said highway may be situate, as the case may be, said proprietors or selectmen may require 'n writing of said corporation,

such alteration or amendment as they may think necessary. And if the required amendment or alteration be reasonable and proper, and the said corporation shall unnecessarily and unreasonably neglect to make the same, such proprietors or selectmen, as the case may be, may proceed to make such alteration or amendment, and may institute and prosecute to final judgment and execution, in any court proper to try the same, any action of the case against said corporation, and shall therein recover a reasonable indemnity in damage for all charges, disbursements, labor and services, occasioned by making such alteration or amendments, with costs of suit."

At the trial, before *Wilde* J., it appeared, that the rail-road corporation had located their rail-road across the travelled part of the highway in question, and in constructing their rail-road had made the excavation mentioned in the declaration ; that as the plaintiff was passing in a chaise on the highway, in the evening, he was thrown into the excavation, by which the chaise was broken, the horse killed, and he himself injured in his person ; that at the time of the accident the rail-road was not completed, and that the excavation was necessarily made in constructing the rail-road ; that on the day before the accident happened, one of the selectmen of Lowell notified to the person employed by the rail-road corporation to superintend the work, that some barrier must be put up for the security of persons travelling on the highway, and that such superintendent promised that it should be done, so as to make the highway safe before night ; and that poles had been previously kept up to guard persons passing on the highway, but had been necessarily removed by the workmen, because they obstructed the work.

Upon this evidence it was contended by the defendants, that they were not liable ; and that if the plaintiff had any remedy, it must be by an action against the rail-road corporation ; but the judge instructed the jury, that the defendants were liable, notwithstanding the road was put in the condition which caused the accident, by the rail-road corporation.

To this instruction the defendants excepted. A verdict was returned by the jury, for the plaintiff.

The defendants moved for a new trial, because the instruction to the jury was erroneous in point of law.

At the present term of the Court, the death of the plaintiff, on Saturday, after the commencement of the term, having been suggested, it was moved by the counsel for the defendants, that the action should be dismissed. The counsel who were for the plaintiff contended, that judgment should be entered up as of some day of this term before his decease.

*Fletcher* and *Wright*, for the defendants. The action does not survive, the damages being principally for a personal injury. Judgment is entered *nunc pro tunc*, only where the case lies under advisement for the convenience of the Court ; here the suit awaited the further action of the parties, who were to have a hearing. If it be argued, that the difficulty was caused by the motion of the defendants for a new trial, and that one party should not suffer in consequence of a delay occasioned by the other, the answer is, that the same difficulty might arise from any opposition to the action in any stage of its progress, and therefore the argument would prove that no action should be abated by the death of the plaintiff after it was commenced.

The duty of the town to keep the highway in repair, at the place where this accident happened, was necessarily suspended by the operations of the rail-road corporation, who were acting in pursuance of the authority vested in them by their act of incorporation ; and that duty and the consequent liability were imposed on the rail-road corporation. The town could not interfere in any manner with the operations of the workmen on the rail-road, or guard against the accident ; and therefore should not be held responsible for the consequences. The plaintiffs must seek their remedies against the rail-road corporation, under the 11th section of their act of incorporation. *Roxbury* v. *Worcester Turnpike Corporation*, 2 Pick. 41 ; *Commonwealth* v. *Worcester Turnpike Corporation*, 3 Pick. 327 ; *Farmers Turnpike* v. *Coventry*, 10 Johns. R. 389 ; *The People* v. *Denslow*, 1 Caines's R. 177 ; *The State* v. *Hampton*, 2 N. Hamp R. 22.

*F. Dexter*, *Mann*, and *Olcott*, for the plaintiff, as to the question arising in consequence of the death of the plaintiff, cited *St.* 17 *Car.* 2, *c.* 8 ; Gould's Pl. *c.* 5, § 94 ; *Burnett* v. *Holden*, 1 Lev. 278 ; S. C. T. Raym. 210 ; Third

Report of British Commissioners on Courts of Common Law, 16.

PUTNAM J. delivered the opinion of the Court. In regard to the motion of the defendant to dismiss the action, on account of the death of the plaintiff, we think that the law upon this subject is well stated in Tidd's Pract. (1st Am. edit.) 846. " If either party after *verdict*, had died in vacation, judgment might have been entered that vacation, as of the preceding term, and it would have been a good judgment at *common law*, as of the preceding term ; though it would not be so upon the statute of frauds in respect of purchasers, but from the signing. And if either party die after a special verdict, and pending the time taken for argument or advising thereon, or on a motion in arrest of judgment, or for a new trial, judgment *may* be entered at *common law* after his death, as of the term in which the *postea* was returnable, or judgment would otherwise have been given *nunc pro tunc ;* that the delay arising from the act of the court may not turn to the prejudice of the party." And although there can be no appearance for the party who has deceased, yet the court will hear from any one of its officers, as an *amicus curiæ*, any suggestions as to the merits. *Ilsley's Case*, 1 Leon. 187. In *Oades* v. *Woodward*, 1 Salk. 87, the attorney for the plaintiff was permitted to enter the judgment as of a preceding term, although the party died in the vacation. The death of the party was not considered as a revocation of the power to confess the judgment. If the party died at the same term when the suggestion was made, the court would not take any notice of it, but proceed to enter up the judgment. And in that case the court entered up judgment in 22 *Car.* 2, as of Michaelmas term, 20 *Car.* 2, when the party who had died was in full life, the cause having been pending from that time, but no continuances having been entered. That proceeding was held to be well warranted by the common law and by statutes. *Crispe* v. *Jackson*, 1 Sid. 462.

The court will go back to the time when the judgment might have been rendered on the verdict, if no motion had been made which prevented it. *Tooker* v. *Duke of Beaufort,* 1 Burr. 147 ; *Mayor of Norwich* v. *Berry*, 4 Burr. 2277.

Currier
v.
Lowell.

It was stated at the argument, that the plaintiff deceased on Saturday after the commencement of this term. And we are all of opinion, that the judgment may legally be rendered as upon some day of the term when he was in full life.

The liability to keep highways and bridges in repair is clearly upon towns, unless some other liability is shown to exist.

The defendants contend, that the *St.* 1830, *c.* 4, creates such other liability and imposes such duty upon the Boston and Lowell Rail-Road Corporation, and therefore that they (the defendants) are not answerable to the plaintiff. The judge, who sat at the trial, instructed the jury, that the defendants continued liable, notwithstanding that act of incor· poration.

The liability of the rail-road corporation is immediately to the selectmen of the town, in which the rail-road crosses a highway. But the liability of the town to travellers remains as it was by the *St.* 1786, *c.* 81, § 1. The work is to be done reasonably and properly, to the satisfaction of the selectmen ; and if it should not be so done, the selectmen may make the necessary alteration themselves, and recover the expense from the rail-road corporation. So that the case stands in regard to travellers just as if the inhabitants of the town were making extensive alterations in a highway, or were making a new bridge or repairing an old one upon a highway. They must conduct the work in such manner as that the persons and property of the travellers passing, shall not be unreasonably exposed. Suppose a road or bridge were carried away by a torrent, the legislature intended that the repairs should be made within a reasonable time, and that proper guards · or cautions should be set up and made known to travellers to prevent injuries. The remedy for the traveller, who is injured in person or property, is immediately against the town, upon which the liability is imposed by the statute. Whether or not the town has any remedy over for neglect against those employed in the work, is a matter with which the traveller has no concern. We think the instruction given to the jury at the trial was correct.

*Judgment according to verdict.*